376 P.2d 37

**Joe CLARK and Commercial Standard Insurance Company, Plaintiffs-Appellants,**

v.

**G. V. CASSETTY, Defendant-Appellee.**

No. 6922.

Supreme Court of New Mexico.

Nov. 5, 1962.

Smith, Smith & Tharp, Clovis, Aldridge & Aldridge, Hurshel Harding, Farwell, Tex., for appellants.

Rowley, Davis, Hammond & Murphy, Clovis, Crenshaw, Dupree & Milam, Lubbock, Tex., for appellee.

CARMODY, Justice.

Plaintiffs (appellants here) seek a new trial, contending that they were prejudiced because of a false issue, i. e., contributory negligence, having been submitted to the jury.

Plaintiffs claim damages for the fire loss of some eighty-three acres of standing wheat and 10,000 pounds of wheat which had been loaded into defendant's truck. The alleged negligence on the part of the defendant was the operation of the truck with a defective muffler, while the vehicle was being used to haul wheat to a grain elevator from combines working in plaintiff Clark's field. In the process, it was neces-

sary for the truck to cross the field and be loaded from the bins of the combines as they became filled. The stubble remaining after the combines had passed was from six-to-ten inches to two-and-a-half feet tall, and it was necessary for the truck to drive over and through the stubble to approach or leave the combines. The muffler of the truck was some twelve inches from the ground and there was evidence that it was defective. After the truck had received some 10,000 pounds of wheat, it was driven across the field again to take on additional grain from one of the combines, and just before loading, a fire broke out underneath the truck. The fire spread to the windward, destroying eighty-three acres of wheat in addition to the truck, together with the loaded wheat.

The defense was based upon the theory that the plaintiff, through his agent, had instructed the combines to commence their operation on the easterly side of the field, at a time when a thirty- to forty-mile wind was blowing from that direction, the defendant claiming that if the operation had commenced from the west, there would have been very little destruction of wheat. Allied to this claim, the defendant urges that a person of considerable farming experience, such as the plaintiff, should have been aware of the danger of fire and particularly that all exhaust systems can become extremely hot, especially when loaded, and could well cause a fire, regardless of the condition of the exhaust system. We do observe that the defendant's pleadings alleged assumption of risk on the part of the plaintiff Clark, and not contributory negligence, as such.

At the close of the evidence in the case, the trial court instructed the jury on contributory negligence and proximate cause, among other things, and also submitted to the jury, at the defendant's request, two interrogatories, one of which dealt with whether the plaintiff, through his agent, had directed that the operations commence on the east side of the field, and, second, that if the jury found this was true, considering the weather as it then existed, whether the plaintiff was contributorily negligent. The jury answered both interrogatories in the affirmative and also returned its verdict in favor of the defendant. The plaintiff strenuously objected to the submission of the interrogatories, but did not state any exception to the giving of the general instruction on contributory negligence.

The plaintiffs moved for judgment notwithstanding the verdict or for new trial, and upon this being denied and judgment entered, filed a motion for new trial, which was also refused. On both of these occasions, as well as at the time of giving the interrogatories, the question of whether there was any evidence to justify the submission of contributory negligence to the

jury was brought to the attention of the trial court. It is not contended that the error, if such it was, was not preserved.

We are thus faced with the question as to whether or not, based upon the testimony offered, it was error to allow the jury to consider the question of contributory negligence.

■ It is quite obvious that the direction of the wind played a large part in the "damage" to the standing wheat, although it is questionable if it had anything at all to do with the loss of the wheat already on the truck. Be this as it may, can it be said that the plaintiff's action proximately contributed to the "injury"? We think not. The terms "injury" and "damage" are not synonymous—in fact, they are, in law, materially different. Appellee fails to take this distinction into account. 1 C.J.S. Actions § 15a, page 1005, contains a clear explanation of the difference between the two terms, as follows:

"The term 'injury' is sometimes used in the sense of 'damage,' as including the harm or loss for which compensation is sought, and has been defined as damage resulting from an unlawful act; but in strict legal significance, there is, properly speaking, a material distinction between the two terms, in that injury means something done against the right of the party, producing damage, whereas damage is the harm, detriment, or loss sustained by reason of the injury."

See, also, Oklahoma City v. Hopcus, 1935, 174 Okla. 186, 50 P.2d 216; and City of North Vernon v. Voegler, 1885, 103 Ind. 314, 2 N.E. 821.

■ In the instant case, the injury was the fire. Certainly, neither plaintiff's instruction as to where to start the combining operation, nor the wind, were causes, or concurring causes, in starting the fire. As we view the evidence, the proximate cause of the "injury" was the act of the defendant. The "injury," not the resulting "damage," apparently would have occurred no matter where the combining operations had been commenced. We said in Moss v. Acuff, 1953, 57 N.M. 572, 260 P.2d 1108:

"No rule of law has been more generally accepted than the rule that contributory negligence of a plaintiff is a defense for a defendant charged with negligence. Equally accepted is the rule that the right of a plaintiff to recover for his own injury is not affected by having contributed to the injury, unless proximately contributing. Williams v. Haas, 52 N.M. 9, 189 P.2d 632; Haire v. Brooks, 42 N.M. 634, 83 P.2d 980. Also see Miller v. Marsh, 53 N.M. 5, 201 P.2d 341; 60 C.J.S., Motor Vehicles, § 299."

Also, in Shephard v. Graham Bell Aviation Service, 1952, 56 N.M. 293, 243 P.2d 603, we used the following language:

"* * * The fact that some other cause concurred with the negligence of a defendant in producing an injury does not relieve him from liability, unless it is shown such other cause would have produced the injury independently of defendant's negligence."

It would thus appear that unless the plaintiff voluntarily exposed himself to a known danger, he could not be guilty of contributory negligence.

In McMullen v. Ursuline Order of Sisters, 1952, 56 N.M. 570, 246 P.2d 1052, we observed:

"* * * A plaintiff's knowledge of the physical characteristics of the offending instrumentality or condition does not, in itself, constitute contributory negligence. A voluntary exposure to a known danger is an essential element of contributory negligence. Moreover, it is the appreciation of, or the opportunity to appreciate, the peril in an instrumentality or condition, rather than a knowledge of its physical characteristics, that bars a plaintiff of recovery for negligence. * * *"

Of necessity, the known danger, as applied to the plaintiff, would have to be the expectation of fire while attempting to harvest and gather wheat in the manner employed by the combining and trucking crews. The defendant proved that plaintiff Clark had long experience as a farmer, was familiar with vehicles used in farming operations, and that he knew that there was "possible" danger from fire in the use of such vehicles. However, there was no proof that the threshing and gathering operations were performed other than in the usual and customary manner in the vicinity, no evidence that fire could be anticipated as the natural and probable result under the techniques used, and no witness testified to having known of the occurrence of such a fire.

The testimony shows that the combine moved up and down the east side of the field; as its bins became full, the truck would cross the field, over the portion already cut, to the combine machine, and the grain would be dumped into the truck. Two truckloads of grain had already been hauled to the grain elevators and approximately 10,000 pounds of threshed wheat had been dumped into defendant's truck when the field caught fire. At the time of the fire, the truck and the combine were located approximately in the middle of the field, about 200 feet from the east boundary. We doubt if the occurrence of fire is such an ever-present danger during a harvesting operation so as to amount to negligence on the part of a wheat farmer in permitting trucks to drive across a stubble-covered area to receive a "dump" from the combine. In Hill v. Leichliter, 1949, 168 Kan. 85, 211 P.2d 433, the court stated:

" * * * Most anyone with a meager knowledge of harvesting operations might know that there is always some danger of an automobile, a combine, or any other gasoline propelled vehicle setting fire to dry wheat stubble while moving along through the stubble under its own automotive power—but the danger of that possibility is accepted by everyone as being inherent in the business of carrying on a wheat harvest. The defendant in all probability was cognizant of this danger and perhaps he did know that there was some danger of a fire when driving a car through dry wheat stubble. While this may have been true, he may not have known that a fire was *likely to result.* His act of driving into the wheat stubble was one that is customary in the harvest fields—and it is common knowledge that a fire is not anticipated or expected to be the likely result every time a gasoline propelled vehicle moves across wheat stubble. That is to say, the realization that there may be some danger in this connection does not necessarily imply that the defendant in driving through the field, by the use of ordinary care and prudence, should have expected a fire to be the natural and probable result of his act." (Emphasis by the Kansas court.)

■ It is to be noted that, ordinarily, the muffler of an automobile will be lower to the ground than that of a truck, and will thus reach farther into the stubble than would a truck muffler. We think the Kansas court was correct in stating that "fire is not anticipated or expected to be the likely result" of driving a gasoline-propelled vehicle across wheat stubble. Therefore, plaintiff did not voluntarily expose himself to a known danger. See, also, Behrens v. Gottula, 1955, 160 Neb. 103, 69 N.W.2d 384. The cases cited by the defendant contrary to our holding involved steam-powered threshing machines of a vintage no longer in operation and not similar to a gasoline-driven truck such as used here. Therefore, the cases are not in point.

■ Defendants refer to our long-standing rule that contributory negligence is a question for the determination of the jury, where the minds of reasonable men may differ. Marchbanks v. McCullough, 1942, 47 N.M. 13, 132 P.2d 426; Gutierrez v. Valley Irrigation & Livestock Co., 1960, 68 N.M. 6, 357 P.2d 664; Button v. Metz, 1960, 66 N.M. 485, 349 P.2d 1047; Terry v. Bisswell, 1958, 64 N.M. 153, 326 P.2d 89; and Barakos v. Sponduris, 1958, 64 N.M. 125, 325 P.2d 712. However, this rule has no application to the facts in the instant case. See, Crespin v. Albuquerque Gas & Electric Co., 1935, 39 N.M. 473, 50 P.2d 259; and Barakos v. Sponduris, supra. There was no showing that any act of the plaintiff caused, or concurred in causing, the injury, nor was it shown that the plaintiff

had knowledge of the dangerous condition which was encountered. Compare, Snodgrass v. Turner Tourist Hotels, 1941, 45 N.M. 50, 109 P.2d 775; and Barakos v. Sponduris, supra. It follows that the court erred in submitting the question of contributory negligence to the jury, and the plaintiffs were prejudiced thereby.

The case will therefore be reversed, with direction to the trial court to reinstate the same upon its docket and grant a new trial. It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.

CHAVEZ and MOISE, JJ., not participating.