304 P.2d 880

Marjorie BARRANS, Plaintiff-Appellee,

v.

Archie T. HOGAN, d/b/a National Bakery & Cafeteria, Defendant-Appellant.

No. 6102.

Supreme Court of New Mexico.

Dec. 14, 1956.

K. Gill Shaffer, Albuquerque, for appellant.

Gallagher & Walker, Peter Gallagher, Dale B. Walker, Albuquerque, for appellee.

KIKER, Justice.

In this case, plaintiff sought and obtained a judgment against the proprietor of a cafeteria-type restaurant because of injuries sustained by her in a fall on the floor of the restaurant.

Tables were placed for use of customers on the ground floor and on a second floor, in balcony form.

On May 5, 1955, plaintiff, with one Mary Ladue, went to this place of business at twelve o'clock for lunch. The two took places in the line of persons selecting food from the counters and, having made their selections and finding the tables of the lower floor well filled, went up to the balcony, selected a table, and proceeded with their lunch. When it was nearing one o'clock, plaintiff and her friend started to leave the restaurant. When plaintiff approached the archway through which she had entered, she was eight or ten feet in advance of her friend, and she had just passed between, and was near, two tables, each seating six persons. At that time and place, plaintiff fell and was injured.

At all tables on the ground floor, 42 people may be seated. During the lunch hour, from twelve to one o'clock, the tables on the ground floor are filled, emptied and refilled 2½ to 3 times, so that about 100 people are seated at those tables daily during that hour. In case of rush, four girls will carry away the dishes as people finish and leave. They have strict instructions to remove all particles of food left on the tables or fallen to the floor; and they try to follow the instructions. At other times, one girl does the work of cleaning up.

Plaintiff's testimony is that, after falling, she got up as promptly as possible and started to go on out of the building but, feeling as if she might faint, turned and sat down in a chair at one of the two large tables between which she had walked; that, from where she sat, she saw a little skid mark at the place where she had fallen. An examination of the heel of her shoe, plaintiff testified, showed a piece of pastry or something with juicy food adhering to the heel. This piece was a little larger, she said, than the heel of her shoe. She was wearing shoes having heels about 2½ inches high. Plaintiff says that she stepped on the

food at the place she fell, and that she saw not only a little skid mark, but a wet mark on the floor.

Evidence shows that this cafeteria is operated in connection with a bakery owned and operated by defendant. The place where the cooking is done is in the rear of the cafeteria, beyond a wall which is very close to the counter where the patrons are served in the cafeteria. There is evidence, also, that during the lunch period waitresses will carry trays of foodstuffs from the kitchens along the aisle in which plaintiff walked at the time of her fall, to enter the front part of the building where the bakery products are sold, and that return trips from bakery to kitchens will be made. Such movements may be made during the lunch hour as many as four or five times.

There is a direct conflict in the evidence as to whether a skid mark and a wet place were on the floor immediately after plaintiff fell.

It was proper, therefore, for the case to be determined by the jury, provided that as matter of law plaintiff had made a prima facie case of negligence on defendant's part.

Defendant insisted consistently and persistently thoughout the trial that defendant did not have the knowledge of any dangerous condition required, as matter of law, to charge him with negligence proximately causing defendant's fall and resulting injury.

At the end of plaintiff's case, defendant moved the court to take the case from the jury and to dismiss it for want of evidence showing knowledge on defendant's part of any dangerous condition at the time and place when and where plaintiff fell, which proximately caused her injury; and also that there was not sufficient evidence to justify holding that defendant should have known of the dangerous condition at that time and place. This motion was denied. At the close of the whole case, defendant renewed his motion, and it was again denied.

After the jury had returned a verdict in favor of plaintiff, defendant moved the court to set aside the verdict of the jury and render judgment notwithstanding the verdict in favor of defendant.

In all these motions, it was submitted that there was no evidence to show that defendant had knowledge, or was charged with knowledge because of inferences to be drawn from the evidence, of any dangerous condition.

Defendant raises here the question of knowledge just as presented to the trial court.

This court has taken the position that the proprietor of a place of business to which any and all members of the public are invited is not a guarantor of the safety of those who enter such place of business. It is the established holding in this court

that, in order to render a proprietor of a place of business liable in damages to another for injuries sustained in that place of business, he must be guilty of negligence; and that such negligence must consist of the maintenance of a dangerous condition in or about the place of business and of knowledge on the part of the proprietor of the existence of the dangerous condition, or there must be evidence giving rise to inferences which charge the proprietor with knowledge.

The case is De Baca v. Kahn, 49 N.M. 225, 161 P.2d 630, 635, from which we quote the following:

"We are committed to the view that the proprietor of a store is not an insurer against accidents to his customers but is bound only to exercise reasonable care to keep his premises, which the public is tacitly invited to use, safe for that purpose. Furthermore, the mere fact that an invitee falls on the floor of a store does not of itself raise a presumption of negligence on the part of the owner. What constitutes due care of an inviter is always to be determined by the circumstances and conditions surrounding the transaction under consideration."

Again we quote from the De Baca case:

"To entitle the plaintiffs to recover, it is necessary that they show some specific act of negligence on the part of the defendant, or the existence of conditions so obviously dangerous as to amount to evidence from which an inference of negligence would arise. [Citing cases.]"

In the De Baca case the court took a quotation from 20 R.C.L. 56, § 52, part of which we set out here:

"'* * * Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. In the language of Mr. Justice Harlan, the owner is liable to invited persons for injuries "occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation."'"

See also the annotation found at 162 A.L.R. 949–990.

Evidence that the proprietor, defendant, was not present at his place of business

when plaintiff suffered her fall was taken. There is no testimony showing that any dangerous condition had existed at the place where she fell at any time when he might have had knowledge of that condition. It is true, of course, that particles of food may escape the notice of the girls who do the cleaning after meals have been finished, and that people may slip and fall on such particles. Such a condition, as far as evidence in this case shows, could exist at any place in the cafeteria, even on the stairway. This is a matter as well known to the patrons of the cafeteria as to the proprietor. The proprietor, according to the evidence, had done 'everything he could do to make the place reasonably safe; and had succeeded to the extent that there had been no such falls previously in the seven years he had operated this place of business. If his instructions to the girls working in the cafeteria are fully carried out, there will be no food on the floor at any time creating a dangerous condition.

We find the evidence in this case wholly lacking as to knowledge on defendant's part of any dangerous condition at the time and place when and where plaintiff fell; and we find no evidence from which it may fairly be inferred that defendant did have knowledge that there was a dangerous condition at the time. To say that the defendant did have knowledge that particles of food might fall to the floor at any time, is not sufficient to charge him with negligence as the cause of plaintiff's misfortune.

We think the motion made by defendant at the close of plaintiff's case should have been sustained; and that motion being overruled, we think the motion made at the close of the whole case should have been sustained; and that motion having been overruled, and the case having been submitted to the jury, we think the motion to set aside the verdict and enter judgment notwithstanding the verdict for the defendant should have been sustained.

The judgment should be reversed, and the case should be remanded with directions that it be dismissed. It is so ordered.

COMPTON, C. J., and LUJAN and McGHEE, JJ., concur.

SADLER, Justice (dissenting).

It is my firm belief there was sufficient evidence to make out a prima facie case and take the case to the jury. The case is altogether different on its facts from DeBaca v. Kahn, 49 N.M. 225, 161 P.2d 630. There, the building in which plaintiff slipped on a spot of oil and injured herself was a shoe store. Neither the proprietor nor anyone else knew or had any reason to suspect the presence of oil on the floor.

The case is quite different, as here, where a cafeteria was operated and patronized by

more than 800 customers daily with constant droppings on the floor of food, consisting of parts of soft rolls, the remnants of chicken pie and other articles of food.

I feel quite convinced it was within the province of the jury to say whether the defendant knew, or should have known, of the presence on the floor of chicken pie, or some other slippery substance, dropped from tables or trays. Perhaps another employee armed with a broom and dust pan might have kept the floor free from such hazards. It was the jury's province, not that of the court, to say. Since the majority say nay—when, as I feel, they should have said yea,

I dissent.