492 P.2d 1273

Ella Lee CROCKETT, Plaintiff-Appellee,

v.

ENCINO GARDENS CARE CENTER, INC., a corporation, Defendant-Appellant.

No. 699.

Court of Appeals of New Mexico.

Dec. 10, 1971.

Certiorari Denied Jan. 18, 1972.

Michael M. Rueckhaus, Albuquerque, for defendant-appellant.

Robert N. Singer, Albuquerque, for plaintiff-appellee.

## OPINION

COWAN, Judge.

Defendant appeals in this slip and fall case from a judgment entered in favor of the plaintiff following trial before the court. Defendant asserts: (1) defendant was not negligent under New Mexico law; (2) the trial court erred in concluding that plaintiff did not assume the risk and was not contributorily negligent; (3) plaintiff failed to show by a preponderance of the evidence that the slip and fall aggravated a preexisting condition; and (4) defendant was prevented from introducing the testimony of a witness.

Although we decide the four issues on the merits, we note the appeal could be dismissed for rule violations. Defendant questions whether substantial evidence supports the trial court's findings of fact. The substance of all evidence bearing on the proposition is not stated in defendant's brief, no findings are directly challenged and only two findings are inferentially challenged in the statement of proceedings.

While the fourth issue is argued in the brief, it is not included in the "points relied on". See respectively § 21–2–1(15) subparagraphs 6, 16(b) and 11, N.M.S.A. 1953 (Repl.Vol. 4); Nance v. Dabau, 78 N.M. 250, 430 P.2d 747 (1967); Cooper v. Bank of New Mexico, 77 N.M. 398, 423 P. 2d 431 (1966); Michael v. Bauman, 76 N. M. 225, 413 P.2d 888 (1966).

We affirm the judgment of the trial court.

The rules which govern our review of the court's findings are stated in Cave v. Cave, 81 N.M. 797, 474 P.2d 480 (1970):

" . . . If supported by substantial evidence, we will not question them. . . . the evidence is to be viewed in the aspect most favorable to the successful parties. The trial court is to determine credibility and weight. All reasonable inferences are to be indulged in to support the findings made; evidence and inferences to the contrary are disregarded. . . ."

Viewed in this light, and as found by the trial court, the evidence is that on March 30, 1969, the plaintiff was employed as a private duty nurse by one Eunice Green, at that time a patient residing at the premises owned by defendant. At approximately 5:15 in the evening the plaintiff proceeded to the kitchen area to obtain a tray of food for her patient's dinner. As she went down a hall leading to a doorway into the dining room and thus to the kitchen, she noted that some sort of work was being done on the left two-thirds of the hallway floor. One of the defendant's employees was placing a preparation on the floor to strip off the wax, an operation which causes the floor to be extremely slippery. Normally this would not be done in the hall outside the dining room and kitchen during the dinner hour but, for an unexplained reason, on this occasion it was. The right one-third of the hallway was not being worked on as the plaintiff turned to her right to enter the dining room door. She was in the kitchen approximately 10 to 15 minutes while the tray was being pre-

pared and then, carrying the tray with both hands in front of her, she left the kitchen, and walked through the dining room area to the doorway leading into the hall. This was the same route she had followed going to the kitchen. On her first step through the door and into the hall she slipped and fell, injuring herself.

The preparation had been applied "right up to the door" and, although the plaintiff had been aware of the wax stripping operation on one side of the hall, she thought the side by which she approached the kitchen would still be open. At the time she fell there were no warning signs in the area as she approached the door leading into the hall.

The status of plaintiff as a business invitee of the defendant is not disputed. The rule relative to the duties owed by a possessor of land to his invitees is set forth in Mozert v. Noeding, 76 N.M. 396, 415 P.2d 364 (1966).

The peculiar factual situation in this case distinguishes it from the other slip and fall cases decided in this jurisdiction. Here an areaway was in one condition upon entry and in another upon departure. There was no warning of the changed condition and it was not open and obvious to one entering the hall from the dining room area.

We are impressed with the language of the court in Union News Co. v. Freeborn, 111 Ohio St. 105, 144 N.E. 595 (1924). There the plaintiff entered a restaurant near a depot to inquire about a train. After obtaining the requested information she recrossed the restaurant and while doing so slipped and fell. The fall was occasioned by soapy water on the floor, placed there by a workman after she crossed the room and before she returned and of which plaintiff had no knowledge. In affirming a judgment for the plaintiff, the Ohio Supreme Court stated:

" . . . As heretofore indicated, evidence in the record supports the claim that the dangerous condition described was a new danger, and was created be-

tween the time plaintiff crossed the floor and her return, recrossing the floor of the restaurant at the same place. The claim asserted and supported by evidence was therefore one of . . . negligence on the part of defendant in placing before the plaintiff a new situation of danger, of which she had no knowledge and of which no attempt was made to apprise her. The principle involved is no different than that applicable, if, under the same circumstances, a flight of steps had been removed from the course she was directed to take, between the time she passed over the steps and her return or attempted return the same way. . . ."

The same rule of liability is applicable here, as is the "flight of steps" comparison. See also Atlantic Greyhound Corporation v. Newton, 131 F.2d 845 (4th Cir. 1942) and Hughes v. Anchor Enterprises, 245 N.C. 131, 95 S.E.2d 577, 63 A.L.R.2d 685 (1956). In *Hughes*, when the plaintiff entered a restaurant and walked to a booth where she was served, the floor of the entrance area and aisle was dry and safe. While she was in the restaurant, defendant through its employee, had created the unsafe condition that caused her to slip and fall when she undertook to use again the identical passageways. *Hughes* applied the rule that we apply here.

■ The finding of negligence on the part of the defendant being supported by substantial evidence, its point one is without merit.

■ Defendant's point two, purportedly attacking the court's conclusion that plaintiff did not assume the risk and was not contributorily negligent, is also without merit. There is no evidence in the record that the plaintiff knew, or should have known, that during her stay in the kitchen, wax remover had been placed on the portion of the areaway by which she entered the dining room and kitchen area. The doctrine of assumption of the risk is not applicable. On the issue of contributory negligence we find no evidence or infer-

ence and the defendant calls none to our attention.

■ As to defendant's point three, there was medical testimony that the plaintiff's condition was caused by the accident; that she aggravated a preexisting back condition by the fall; and that the fall would be a competent producing cause of the injury. As in most personal injury actions, the medical evidence was conflicting, at least in part, but a determination is for the trier of fact and not for this court. Cave v. Cave, supra.

■ By defendant's fourth point, an addendum to point one, defendant complains that it was prevented from introducing testimony of the conditions existing immediately after the accident because a defense witness was unavailable because of illness. The record discloses more than ample time during which the defendant could have obtained the deposition of this witness and the trial court, in its order overruling defendant's motion for a vacation of the setting shortly before trial, granted defendant permission to take the witness' deposition during or after trial. The granting or denying of a motion for continuance rests in the discretion of the trial court and will not be interfered with except for abuse. We find none. Tenorio v. Nolen, 80 N.M. 529, 458 P.2d 604 (Ct. App.1969).

Finding no error, we affirm the judgment.

It is so ordered.

WOOD, C. J., concurs.

SUTIN, Judge (dissenting).

I respectfully dissent.

The defendant challenged the trial court's findings of fact Nos. 4, 6, 7, 8 and 9 which read as follows:

4. That Plaintiff slipped and fell on *wax remover* upon stepping into the hall from the area of the dining room and kitchen on the premises of Defendant, which wax remover was extremely

**414**

slippery when applied to the *tile floor* on Defendant's premises.

6. That the wax remover *so placed by the employee of defendant corporation* was invisible at the time Plaintiff slipped.

7. That no signs or barriers had been placed by such employee near the doorway leading into the hall where plaintiff slipped to warn persons of the dangerous condition of the floor.

8. That the *wax remover* upon which plaintiff slipped and fell *had been placed in front of the door leading from the dining room and kitchen area into the hallway by an employee of defendant corporation.*

9. That it was not normal procedure for employees to conduct wax removal operations in the hallways of defendant corporation during dinner hours thereat, especially as wax removal operations are dangerous and hazardous to passersby. [Emphasis added.]

I have carefully reviewed the record. The evidence most favorable to plaintiff shows the following:

On March 30, 1969, plaintiff was employed by one Eunice Green, a patient at defendant's Care Center. She had been employed 15 months prior thereto and this was the first time wax stripping was done on the floor. At about 5:15 p. m., plaintiff walked down a hallway to a doorway which led into the dining room, then through the dining room into the kitchen to obtain a tray of food for Mrs. Green. She wore crepe rubber sole nurse's shoes. She noticed there was either wax or something being applied to two-thirds of the hallway which was glossy and one-third of the hallway was left out and was not glossy. To enter the dining room, she walked down the one-third part of the hallway that was not glossy. About 30 to 40 feet beyond the entrance to the dining room, she saw a wax remover machine with a man standing where the machine was located. No work was being done as she walked to the kitchen. She remained in the kitchen between ten and

fifteen minutes, obtained a tray of food which she carried in front of her body even with her waist, and began to walk to Mrs. Green's room. She could not see down at her feet, but she could see out. The first step she took out of the dining room into the hallway, she slipped and fell. After she fell, she noticed a "preparation" or "liquid of some sort" or "some substance right up to the door." She did not see "where else the preparation was in the hall at the time (she) fell," or at any other time. She did not know what the substance was. She did not see the machine. The man who had been with the machine asked if she got cut and she said "no," and that was all of the conversation.

After she fell, the "preparation" was on her uniform. She took off the uniform and put towels under it and washed all she could get off of her uniform. She later told her doctor she "slipped on *waxed* floor and fell against the wall, slid down a wall and went to a sitting position." But she testified that as she stepped out on the floor, she didn't see the *wax*.

Fifteen minutes after her fall, the Care Center's maintenance supervisor arrived. On cross-examination by plaintiff, it was disclosed that, on the supervisor's arrival, Mr. Vargas, an employee, was in the process of stripping the floor of wax. Just one side of the hallway had wax on it. The other side was dry.

Expert testimony established that when emulsion is used on a tile floor for wax removal, the floor is slippery and dangerous.

The trial court found the defendant put an invisible, slippery wax remover on its tile floor near the doorway leading into the hall where plaintiff slipped and fell.

There is no evidence, nor any inferences therefrom, to support these findings. There is no evidence that the floor was tile and the "preparation" invisible, or that the "preparation," the "liquid" or the "substance" at the door was an emulsion or wax remover which created a dangerous

condition, or that the defendant was processing the floor at or near the door during ten or fifteen minutes plaintiff was in the kitchen, or that defendant knew of the "preparation" being on the floor in front of the doorway prior to plaintiff's slip and fall. There is a total absence of any evidence to show how or by whom the "preparation" was placed just outside the door. There is no proof of any act of negligence in maintaining the floor over a period of time, or any notice of the presence of the foreign substance on the floor in front of the door, or the existence of a messy condition or pattern of conduct.

Plaintiff's brief has been carefully reviewed. There is no reference to any evidence or inferences therefrom contrary to what has been heretofore mentioned.

Findings of fact without some substantial evidence to support them cannot be sustained on appeal. DeBaca v. Kahn, 49 N.M. 225, 161 P.2d 630 (1945).

Plaintiff has failed to cite any authority on "slip and fall" to sustain the judgment under the evidence in this case. She relies solely on Mozert v. Noeding, 76 N.M. 396, 415 P.2d 364 (1966), which is not a "slip and fall" case. The majority opinion does not rely on any New Mexico "slip and fall" case.

I have reviewed every slip and fall case in New Mexico to determine whether any one of them supports plaintiff's position. I found none. See DeBaca v. Kahn, supra; Barrans v. Hogan, 62 N.M. 79, 304 P.2d 880 (1956); Kitts v. Shop Rite Foods, 64 N.M. 24, 323 P.2d 282 (1958); Williamson v. Piggly Wiggly Shop Rite Foods, Inc., 80 N.M. 591, 458 P.2d 843 (Ct.App. 1969); Jimenez v. Shop Rite Foods, Inc., 72 N.M. 184, 382 P.2d 181 (1963); Lewis v. Barber's Super Markets, Inc., 72 N.M. 402, 384 P.2d 470 (1963); Barakos v. Sponduris, 64 N.M. 125, 325 P.2d 712 (1958); Sanchez v. Shop Rite Foods, 82 N.M. 369, 482 P.2d 72 (Ct.App.1971); Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969); Mahoney v. J. C. Penney Company, 71 N.M. 244, 377 P.2d 663 (1962); Edwards v. Ross, 72 N.M. 38, 380 P.2d 188 (1963).

Edwards v. Ross, supra, appears to be a "wax" case. The plaintiff slipped and fell on the floor of defendant's business. After falling she noticed the floor was discolored, yellowish and slick and felt damp to her touch. Plaintiff's verdict was allowed to stand because she introduced evidence tending to prove that defendant had improperly maintained the floor over a considerable period of time. This fact does not appear in the present case.

In Garcia, supra the court said:

The mere presence of a slick or slippery spot on a floor does not in and of itself establish negligence for this condition may arise temporarily in any place of business. [Cases cited]. Nor does proof of a slippery floor without more give rise to an inference that the proprietor had knowledge of the condition.

It would serve no useful purpose to repeat again the various rules which determine "slip and fall" liability on floors in public premises. Plaintiff's evidence does not come within any rule. This case was tried on two separate hearings: One on May 7, 1970, and the other on November 24, 1970, over six months apart. Perhaps the evidence was not fresh in the trial court's mind after the second hearing. This may have led the trial court to adopt plaintiff's requested findings of fact.

Until the Supreme Court changes the rule in "slip and fall" cases, we should follow the established policy.